UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

GERARD BOYD,

                Petitioner,

    -against-

WARREN CARDIN SAUNDERS,

                Respondent.

------------------------------------X

**MEMORANDUM & ORDER**

16-CV-4885 (KAM)

**MATSUMOTO, United States District Judge:**

        On August 29, 2016, petitioner Gerard Boyd ("petitioner") brought the above-captioned *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section 2254") challenging his conviction of criminal possession of a weapon and resisting arrest both in the second degree. (*See* ECF. No. 1, Petition for Writ of Habeas Corpus ("Pet."), filed August 29, 2016.) For the reasons discussed below, the petition is denied.

**BACKGROUND**

**I.  Crimes of Conviction and Criminal Charges**

        On September 4, 2012, petitioner was arrested for, *inter alia*, possessing a handgun and resisting arrest. As disputed by petitioner and described by the arresting officer, petitioner was observed with a handgun, and when the officers

attempted to retrieve the handgun and arrest petitioner, petitioner resisted. (ECF No. 7-2, Exhibit B, Hearing Transcript ("Hearing Tr."), at 11-13.[1]) During the incident, petitioner threw the handgun through the open door of 312 East 29th Street in Brooklyn, New York. (*Id.* at 9, 11-13.) Police officers retrieved the handgun and found that it was loaded and operable. (*Id.* at 14.) The Kings County District Attorney charged petitioner with the following crimes: (1) criminal possession of a weapon in the second degree; (2) criminal possession of a weapon in the third degree; (3) criminal possession of a weapon in the fourth degree; (4) resisting arrest; and (5) obstruction of governmental administration in the second degree. (ECF No. 7-4, Exhibit E, The People's Appellate Brief ("People App. Br.") at 2.)

## II.  The Suppression Hearing

On May 20, 2013, a pretrial suppression hearing was conducted in Kings County Supreme Court before Judge Riviezzo regarding the legality of petitioner's arrest and search, and at which petitioner sought the suppression of the handgun described above. (ECF No. 7-2, Hearing Tr.) The People presented one witness, New York City Police Officer, Devin Long. (*Id.* at 3.) Petitioner was represented by Herman Walz ("defense counsel"),

---

[1] Citations to the state court record refer to the internal pagination and not the page number assigned by the Electronic Case Filing ("ECF") system.

who cross-examined Officer Long.

According to Officer Long, on September 4, 2012, he was on patrol with two other police officers, Officer Mehmood and Sergeant Aidiniou. (*Id.* at 5.) All three officers were in uniform, in an unmarked patrol car in Brooklyn. (*Id.* at 5, 16.) Officer Long testified that at approximately 12:25 a.m., they responded to a "shots-fired" call and within a few seconds they arrived at the corner of East 29th Street and Clarendon Road. (*Id.* at 5.) At that corner, the officers encountered a large house party with approximately 100 people. (*Id.* at 6, 28.) The officers circled the block a few times, which took about one minute, and when they returned to the corner, the officers observed a group of five black males, including petitioner, walking up the block away from the party. (*Id.* at 6, 28-29.)

Officer Long further testified that he observed the petitioner detach himself from the group "about four houses down from the party area." (*Id.* at 6, 29, 43.) Petitioner then walked into a driveway and behind parked car, at which point petitioner "pull[ed] out a chrome firearm." (*Id.* at 6-7.) On cross-examination, Officer Long testified that "prior to when [he and the other officers] approached [petitioner], [Officer Long] had only seen [petitioner] pull out a shiny object from his waistband," which "appeared to look like a gun." (*Id.* at 57-58.)

Officer Long and Sergeant Aidiniou exited their
vehicle, and Officer Long witnessed petitioner bang on a closed
apartment door at 312 East 29th Street, Brooklyn, New York, and
scream, "Open [] the fucking door." (*Id.* at 8-9.)  Officer Long
and Sergeant Aidiniou "approach[ed] [petitioner and] tried to
get control of the guy with the firearm by holding his hand[.]"
(*Id.* at 11.)  When they tried to grab the firearm away from
petitioner, Devonte Boyd, petitioner's nephew, appeared and
"tried to grab the firearm from Gerard Boyd, tried to grab the
muzzle of the firearm." (*Id.* at 11-12.)  Officer Long and
Sergeant Aidiniou pushed Devonte Boyd away, but then "a black
male . . . opened the door [on which petitioner was banging],"
and petitioner "threw the gun inside the door." (*Id.* at 12, 53-
54.)  Officer Long "tried to enter [] the apartment, but [the
man in the apartment] quickly closed the door," and Officer
Long's hand was "stuck in the door." (*Id.* at 12.)  According to
Officer Long, the door never "shut completely," and he was able
to force it fully open. (*Id.* at 12-13.)  After Officer Long
opened the door, he retrieved the firearm from inside the
apartment. (*Id.* at 13.)

After Officer Long's testimony, defense counsel argued
that the gun should be suppressed because Officer Long had no
right to follow and approach petitioner, and the officer lacked
probable cause to seize and search petitioner. (*Id.* at 68-70.)

Defense counsel contended that the "police officers went out of their way to target a group of individuals," including petitioner, "based on nothing other than the fact that they[] [were] male and black, walking from a party that was already investigated." (*Id.* at 68.) Defense counsel also argued that Officer Long's statement regarding when he saw petitioner pull out a gun was not credible because it contradicted his own grand jury testimony on that subject. (*Id.* at 69, 72.)

In response, the prosecution argued that it met its burden, there was probable cause for the stop-and-frisk, and the seizure of the gun was a valid. (*Id.* at 70-72.)

At the conclusion of the hearing, Judge Riviezzo found on the record that Officer Long was credible. She held that when Officer Long "saw what he reasonably believed to be a gun" in petitioner's hand, the officer "had reasonable suspicion to approach" petitioner. (*Id.* at 73, 76.) The court also held that Officer Long had probable cause to arrest petitioner and seize the handgun "inside of the door" when Officer Long approached petitioner and saw that petitioner "had a gun in plain view in his hand." (*Id.* at 76.)

### III.  Trial, Verdict, and Sentence

Petitioner proceeded to a trial by jury, which found petitioner guilty of criminal possession of a weapon in the second degree and resisting arrest. (ECF. No. 7-3, Exhibit C,

Trial Transcript at 590.)  On July 17, 2013, the trial court

sentenced petitioner to concurrent prison terms of five years

for one count of second-degree criminal possession of a weapon

and one year for one count of resisting arrest, and to five

years of post-release supervision.  (ECF No. 7-3, Exhibit C,

Sentencing Transcript at 8-9.)

## IV.   State Court Appeals

Through appellate counsel, petitioner appealed his

judgment of conviction to the New York Supreme Court, Appellate

Division, Second Division (the "Appellate Division").  On

appeal, petitioner argued, in relevant part, that Officer Long's

testimony at the suppression hearing was "implausible" and

"likely designed to veil an illegal stop and frisk."  (ECF. No.

7-4, Exhibit D, Petitioner's Appellate Brief ("Pet. App. Br.")

at 20-25.)  In the brief, petitioner included a footnote citing

to *Floyd v. City of New York*, 813 F. Supp. 2d 417, 447 (2014)

for "[t]he idea that these officers were effectuating an illegal

stop is not one without precedent."  (*Id.* at 25 n.4.)

Petitioner also argued that the People failed to prove beyond a

reasonable doubt that he possessed a weapon and that the verdict

was against the great weight of the evidence.  (*Id.* at 26-34.)

On December 17, 2014, the People opposed petitioner's

appeal and argued that petitioner's conviction should be

affirmed.  (ECF. No. 7-4, People App. Br.)  The People contended

that the argument that Officer Long's hearing testimony was incredible as a matter of law was partially unpreserved for appellate review under C.P.L. § 470.05 and that the record supported the hearing court's crediting of Officer Long's testimony. (*Id.* at 20-28.) Second, the People argued that petitioner's claim of insufficient evidence was unpreserved for appellate review and meritless. (*Id.* at 29-34.) Additionally, the People contended that the jury's verdict was not against the weight of the evidence. (*Id.*)

Petitioner responded through counsel on January 12, 2015, and addressed the People's arguments that his claims were unpreserved and meritless. (ECF. No. 7-4, Exhibit F, Petitioner's Reply Appellate Brief ("Pet. App. Reply Br.").) On September 20, 2015, petitioner filed a *pro se* "supplemental" brief. (ECF. No. 7-4, Exhibit G, Petitioner's *Pro Se* Supplemental Appellate Brief ("*Pro Se* Br.").) In his supplemental brief, petitioner argued that his conviction should be reversed or, in the alternative, his sentence should be modified because (1) he was denied effective assistance of counsel (*id.* at 2-5); (2) his discovery rights were violated due to the People's non-disclosure of the 911 tapes (*id.* at 6-11); (3) his "liberty rights" were violated due to racial profiling (*id.* at 12-18); and (4) his sentence was harsh and excessive (*id.* at 20-24). Petitioner based his ineffective assistance of

counsel claim on defense counsel's advice that petitioner not
testify and defense counsel's failure to:  investigate the crime
scene, interview the owner of the building neighboring the
arrest location, interview other witnesses, conduct an
investigation pertaining to the circumstances of petitioner's
arrest, and obtain copies of the 911 tapes and radio runs.  (*Id.*
at 2-5.)

In its response to petitioner's supplemental brief,
the People argued: (1) petitioner failed to establish a claim
for ineffective assistance of counsel; (2) petitioner's
discovery claim was unpreserved and without merit;
(3) petitioner's racial profiling claim was not supported by the
record; (4) petitioner's claim that the police officers were not
credible was without merit; and (5) the trial court did not
abuse its discretion in sentencing petitioner.  (ECF. No. 7-4,
Exhibit H, The People's Response to Petitioner's Supplemental
Brief.)

The Appellate Division affirmed the judgment of the
Supreme Court of Kings County on February 17, 2016.  *People v.
Boyd (Boyd I)*, 136 A.D.3d 935 (N.Y. App. Div. 2016).  Petitioner
appealed the Appellate Division's decision to the Court of
Appeals.  In his application for leave, petitioner argued,
through counsel, that leave should be granted because Officer
Long's testimony at the suppression hearing was not credible.

(ECF No. 7-4, Exhibit J, Criminal Leave for Application to the Court of Appeals ("Pet. Leave App.").) The Court of Appeals denied petitioner leave to appeal on May 10, 2016. *People v. Boyd (Boyd II)*, 60 N.E.3d 1203 (N.Y. 2016). Petitioner timely filed the instant petition on August 29, 2016. (ECF No. 1, Pet.)

**STANDARD OF REVIEW**

## I.  Deferential Standard of Review

A writ of habeas corpus filed by an individual in state custody is governed by, *inter alia*, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Section 2254 of AEDPA provides that a district court shall issue a writ of habeas corpus for an individual in state custody "only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Section 2244 provides that a one-year statute of limitations applies to "an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1); *see generally* 28 U.S.C. § 2244(d).

A district court may grant a writ of habeas corpus for claims that were adjudicated on the merits in state court and the adjudication produced a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States." 28 U.S.C. § 2254(d)(1). "A state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001) (brackets in original) (citing 28 U.S.C. § 2254(d)(1)); *see also Reznikov v. David*, Nos. 05-CV-1006 (RRM), 05-CV-1008 (RRM), 2009 WL 424742, at *3 (E.D.N.Y. Feb. 20, 2009) ("Under AEDPA, a proper merits adjudication requires only that (a) a federal claim be raised, and (b) that it be disposed of on substantive, rather than procedural grounds."). "When a state court [adjudicates a federal claim on the merits], a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim — even if the state court does not explicitly refer to either the federal claim or to relevant federal case law." *Sellan*, 261 F.3d at 312.

Clearly established federal law is limited to the jurisprudence of the Supreme Court at the time of the relevant state court decision. *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005). The "contrary to" and "unreasonable application" clauses are analyzed independently. *Stultz v. Artus*, No. 04-CV-3170 (RRM), 2013 WL 937830, at *5 (E.D.N.Y. Mar. 8, 2013). A state court's decision is contrary to federal law "if the state court arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., concurring and writing for the majority in this part). An unreasonable application of law occurs when "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Unreasonableness is measured objectively, and requires "a 'higher threshold' than 'incorrect.' " *Stultz*, 2013 WL 937830, at *5 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The state court's application must have "[s]ome increment of incorrectness beyond error. . . . [H]owever, . . . the increment need not be great[.]" *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000). If a district court determines a state court's application of law was unreasonable, "it must next consider whether such error was harmless." *Stultz*, 2013 WL 937830, at *5 (citations and internal quotations omitted).

Apart from a state court's unreasonable or contrary application of federal law, a district court may grant a writ of habeas corpus when the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §

2254(d)(2). State court determinations of facts are presumed correct, however, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A district court "may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (citations and internal quotation marks omitted). A federal court "cannot grant habeas relief where a petitioner's claim pursuant to applicable federal law, or the U.S. Constitution, has been adjudicated on its merits in state court proceedings in a manner that is not manifestly contrary to common sense." *Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) (quoting *Anderson v. Miller*, 346 F.3d 315, 324 (2d Cir. 2003)).

## II.  Exhaustion Requirement

A district court shall not grant a writ of habeas corpus unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To satisfy this requirement, a prisoner must have "fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts," *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001)

(citation and internal quotation marks omitted), either in the form of "explicit constitutional argument" or by "alleging facts that fall 'well within the mainstream of constitutional litigation,' " *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995). Fair presentation includes a request for discretionary review in the state's highest appellate court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999); *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

If a petitioner includes both exhausted and unexhausted claims in his petition, a district court may allow the petitioner to return to state court to exhaust his claims, amend and resubmit the petition to include only exhausted claims, or deny the petition on the merits. *See McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002); 28 U.S.C. § 2254(b)(2). "[P]lainly meritless" claims should be denied on the merits rather than for failure to exhaust. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). In limited circumstances, the district court may stay a mixed petition until the claims have been properly presented to the state court. *Id.* at 277-78.

## III.  <u>Procedural Bar</u>

Pursuant to the adequate and independent state ground doctrine, federal habeas review is precluded if the last state court to render judgment clearly and expressly states that its judgment rests on a state procedural bar. *Jones v. Duncan*, 162

F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997)). A petitioner may overcome this bar by demonstrating either "cause for the default and actual prejudice" or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Default requires evidence of an objective factor, external to the defense, that explains why the claim was not previously raised, and prejudice can be inferred when the claim, if proven, would bear on the petitioner's guilt or punishment. *See id.; Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999). A fundamental miscarriage of justice requires a showing of actual innocence. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## IV. *Pro Se*

In the instant action, petitioner is proceeding *pro se*. A *pro se* petitioner's pleadings are held to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted), and are construed "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted). "Nonetheless, a *pro se* [litigant] is not exempt from compliance with relevant rules of procedural and substantive law." *Rivera v. United States*, No. 06-CV-5140 (SJF), 2006 WL 3337511, at *1

(E.D.N.Y. Oct. 4, 2006) (citing *Faretta v. California*, 422 U.S. 806, 834 n.36 (1975)). Petitioner's papers are evaluated accordingly.

## DISCUSSION

On August 29, 2016, petitioner filed this timely petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking to vacate his conviction.[2] (ECF. No. 1, Pet.) The petition contains exhausted and unexhausted claims. As discussed in detail below, because the court finds petitioner's unexhausted claims to be without merit, the court does not stay or dismiss the petition. Construing the petition liberally, petitioner raises three claims – a Fourth Amendment suppression claim, ineffective assistance of counsel, and a *Brady* violation – which the court addresses below. For foregoing reasons, the petition is denied.

## I. Fourth Amendment Claim

### A. Legal Standard

Federal habeas relief is not available on a Fourth Amendment claim "where the State has provided an opportunity for full and fair litigation of [the] claim[.]" *Stone v. Powell*, 428 U.S. 465, 482 (1976). Thus, "once it is established that a petitioner has had an opportunity to litigate his [] Fourth

---

[2] Petitioner has been released from custody and is currently on parole until February 6, 2020; however, this does not moot his habeas petition. *See Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968); *U.S. v. Wiltshire*, 772 F.3d 976, 979 (2d Cir. 2014).

Amendment claim (whether or not he [] took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief." *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002). There are only two circumstances in which a habeas court may review a Fourth Amendment claim: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations;" or (2) if the state has provided a corrective mechanism, but the defendant was "precluded from utilizing that mechanism because of an unconscionable breakdown in the underlying process." *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977); *accord Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

B.    Application

Petitioner's Fourth Amendment claim fails. The Second Circuit and courts within the Circuit have "repeatedly upheld New York's procedures for litigating Fourth Amendment Claims as facially valid." *Lopez v. Lee*, No. 11-cv-2706 (JG), 2011 WL 6068119, at *9 (E.D.N.Y. Dec. 7, 2011) (collecting cases). For this reason, courts within this Circuit have almost uniformly held that challenges to New York state court rulings as to the reach of the exclusionary rule are not reviewable under *Stone v. Powell*. *Breazil v. Superintendent Artis*, No. 15-cv-1912 (BMC), 2015 WL 9581816, at *12 (E.D.N.Y. Dec. 30, 2015) (collecting

cases). Petitioner requested and received a suppression hearing, at which he was represented and his attorney cross-examined the sole witness and presented oral argument to the court. The state court heard the evidence, denied the suppression motion, and stated its reasons on the record. Thus, petitioner cannot show there were no corrective mechanisms.

Therefore, to warrant review of his Fourth Amendment claim, petitioner must demonstrate "an unconscionable breakdown" in the underlying process. To allege an unconscionable breakdown, a petitioner must assert that "no state court . . . conducted a 'reasoned method of inquiry into relevant questions of fact and law,' or any inquiry at all," into the Fourth Amendment claim. *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987) (citation omitted). Construing the petition liberally, petitioner argues two bases for an unconscionable breakdown.

First, petitioner argues there was an unconscionable breakdown because the suppression hearing court failed to consider the "implication of the decision in" *Floyd v. City of New York,* 813 F. Supp. 2d 417 (S.D.N.Y. 2014) with respect to racial profiling in stop and frisks. (ECF No. 1, Pet. at 29-32.) As an initial matter, this claim is unexhausted because petitioner did not present it to the state court. *Daye v. Attorney General of State of N.Y.,* 696 F.2d 186, 191 (2d Cir.

1982) (en banc). Defense counsel's passing mention that the "police officers went out of their way to target a group of individuals based on nothing other than the fact that they[] [were] male and black, walking from a party that was already investigated" does not suffice. (ECF No. 7-2, Hearing Tr. at 68.) The footnote in petitioner's brief to the Appellate Division mentioning *Floyd* does not correct the problem. (ECF No. 7-4, People App. Br. at 25 n.4.) Moreover, petitioner did not mention the issue of racial profiling at all in his request for leave to file an appeal with the New York Court of Appeals. (ECF No. 7-4, Pet. Leave App.)

Nonetheless, unexhausted claims may be deemed exhausted and procedurally barred if the state court in which the petitioner would be required to present his claim would refuse to hear it on procedural grounds. *Bullock v. Grassiano*, No. 13-cv-5081 (BMC), 2013 WL 5774870, at *4 (E.D.N.Y. Oct. 24, 2013) (citing *Gray v. Netherland*, 518 U.S. 512, 162 (1991)). That is the case here. Petitioner cannot seek collateral review of this racial profiling claim in state court because there were sufficient facts on the record for petitioner to raise the racial profiling claim on direct appeal, but he declined to do so. *See* N.Y. Crim. Proc. Law ("CPL") § 440.10(2)(c). Thus, petitioner's racial profiling claim is deemed exhausted and procedurally barred.

Even if petitioner's claim were not procedurally barred, it would nonetheless fail. In support of his claim that the suppression hearing court's failure to address petitioner's racial profiling claim constituted an unreasonable breakdown, petitioner merely parrots the language of unconscionable breakdown without asserting any facts indicating that the state courts failed to conduct a sufficient inquiry into his Fourth Amendment claim of racial profiling. Petitioner's claim is insufficient to establish an unconscionable breakdown. *See Smith v. Pearlman*, No. 01-CV-5835 (JG), 2003 WL 21738602, at *2 (E.D.N.Y. July 15, 2003) (denying petitioner's Fourth Amendment claim that his search and seizure rested on improper racial profiling because he made no argument that the state court failed to conduct a reasoned inquiry into his claim). Thus, *Stone v. Powell* precludes review of petitioner's Fourth Amendment racial profiling claim.

Second, petitioner argues an unconscionable breakdown occurred because Officer Long's testimony at the suppression hearing was insufficient to support probable cause and because the court afforded the testimony "undue deference." (ECF No. 1, Pet. at 27, 32-35.) Petitioner raised the credibility claim on his direct appeal, and the Appellate Division rejected it, finding that the hearing court's credibility determinations were entitled to great deference and supported by the evidence. *Boyd*

*I*, 136 A.D.3d at 936. Petitioner raised a similar argument in his leave for appeal to the Court of Appeals, and leave was denied. *Boyd II*, 60 N.E.3d 1203. Similarly, this court will not disturb the hearing court's credibility findings. Factual findings of a state court are presumed correct, and the petitioner bears the burden of rebutting that presumption. 28 U.S.C. § 2254(e)(1); *Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003). The presumption is "particularly important" with respect to credibility determinations. *Cotto*, 331 F.3d at 233. Petitioner has not offered any reasons why the presumption is inappropriate here. Thus, the court will not disturb the suppression hearing judge's credibility determination. Moreover, petitioner fails to explain how this credibility issue rises to the level of an unconscionable breakdown. Thus, the court finds that petitioner's Fourth Amendment claim, to the extent it can be characterized as such, regarding Officer Long's testimony is precluded.

For the above-stated reasons, petitioner's Fourth Amendment claims are denied.

## II.  Ineffective Assistance of Counsel

Petitioner argues that he received ineffective assistance of counsel for two reasons. (ECF No. 1, Pet. at 35-44.) First, counsel did not request 911 tapes and radio reports and, relatedly, did not request sanctions for the People's

failure to submit those materials to the defense. (*Id.* at 35-40.) Second, counsel did not initiate an investigation as to important fact witnesses. (*Id.* at 40-44.)

A. Legal Standard

Under the Sixth Amendment, a criminal defendant is afforded "the right . . . to have the Assistance of Counsel for his Defense." U.S. Const. amend. VI. This right does not guarantee a defendant "perfect counsel," but rather effective assistance of counsel. *Constant v. Martuscello,* 119 F. Supp. 3d 87, 142 (E.D.N.Y. 2015) (citations and internal quotation marks omitted), *aff'd,* 677 F. App'x 727 (2d Cir. 2017).

To establish a claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test announced in *Strickland v. Washington*, 466 U.S. 688, 691 (1984). A petitioner must show that: (1) counsel's performance was deficient, meaning that it "fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would be different." *Id.* at 688, 694. The two prongs may be addressed in either order, and, moreover, the court is not required "to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

"Reasonableness" under the performance prong is measured by "prevailing professional norms." *Id.* at 688. Generally, "there is a strong presumption that counsel's actions 'might be considered sound trial strategy.' " *Stultz*, 2013 WL 937830, at *7 (quoting *Strickland*, 466 U.S. at 688-89). The court presumes counsel acted reasonably where "counsel is prepared and familiar with the relevant facts and legal principles[.]" *Brown v. Phillips*, No. 03-cv-0361 (DGT), 2006 WL 656973, at *8 (E.D.N.Y. Mar. 12, 2006) (citation and quotation marks omitted). Under the prejudice prong, a "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury," *id.* at 695, and the petitioner must "affirmatively prove prejudice arising from counsel's allegedly deficient representation," *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) (citations and internal quotation marks omitted).

"[T]he standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Due to the heightened deference under AEDPA, "[a] federal court reviewing a state court's determination regarding ineffective assistance of counsel has been characterized as 'doubly' deferential by the Supreme Court." *Constant*, 119 F. Supp. 3d at 143 (quoting *Harrington*, 562 U.S. at 105). Thus,

"[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable" but rather "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

B.   Application

Petitioner raises claims of ineffective assistance of defense counsel based on defense counsel's alleged failure to obtain the 911 tape and failure to interview and investigate important fact witnesses.   (ECF No. 1, Pet. at 35-44.)   In his *pro se* supplemental brief to the Appellate Division, petitioner raised an ineffective assistance of counsel claim based on, among other things, defense counsel's alleged failure to request 911 tapes and "to interview other (unnamed) potential witnesses in the area of the crime."   (ECF. No. 7-4, *Pro Se* Br. at 2.) The Appellate Division found that petitioner's claims to this effect were "based, in part, on matter appearing on the record and, in part, on matter outside the record[.]"   *Boyd I*, 136 A.D.3d at 936.   Petitioner did not raise ineffective assistance of counsel in his request for leave for appeal.   For the reasons discussed below, petitioner's record and non-record claims are denied.

1.   *Record-Based Claims*

To the extent petitioner's claim alleging ineffective assistance of counsel on the basis of counsel's failure to

request the 911 tape is record based, it is unexhausted, procedurally barred, and meritless.[3] A claim is record-based "when a reviewing court could conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts[.]" *Chatmon v. Mance*, No. 07-cv-9655 (KMK) (GAY), 2011 WL 5023243, at *9 n.5 (S.D.N.Y. Oct. 20, 2011). A record-based claim may be brought on direct appeal in the New York state court system. *McDowell v. Heath*, No. 09-cv-7887 (RO) (MHD), 2013 WL 2896992, at *4 (S.D.N.Y. June 13, 2013). Under New York law, if a criminal defendant fails to raise a record-based claim on direct appeal, before both the Appellate Division and the Court of Appeals, he is not permitted to otherwise collaterally attack his conviction with that claim. *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2011) (citing CPL §§ 440.10(2)(c), 450.10); *see also Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (explaining exhaustion requires raising the claim in application for leave to appeal to the Court of Appeals).

Petitioner's claim regarding defense counsel's alleged failure to request the 911 tapes is record-based and, therefore,

---

[3] The Appellate Division did not specify which of petitioner's claims were record-based and which were not. Nonetheless, the court does not evaluate petitioner's claim regarding counsel's alleged failure to interview and investigate witnesses as record-based because it involves defense counsel's strategic decisions, which are generally not amendable to resolution based on the record. *Griffin v. Suffolk Cnty.*, No. 13-cv-4375 (JFB), 2013 WL 6579839, at *3 n.3 (E.D.N.Y. Dec. 16, 2013) (collecting New York state cases).

was required to be raised on direct appeal. Although petitioner raised the claim in his *pro se* supplemental brief to the Appellate Division, he did not raise it in his request for leave to appeal to the Court of Appeals. Therefore, petitioner's record-based allegations are "subject to an adequate and independent state procedural bar, and, as a consequence, are exhausted and procedurally defaulted for the purposes of federal habeas review." *Jones v. Brandt*, No. 09-cv-1035 (SAS), 2013 WL 5423965, at *8 (S.D.N.Y. Sept. 26, 2013) (finding a petitioner's ineffective assistance of counsel claim procedurally barred because the petitioner brought his one appeal as of right but did not raise the ineffective assistance of counsel claim in that appeal). Although procedurally barred claims may be reviewed on habeas if the petitioner demonstrates either default and prejudice or makes a showing of actual innocence, petitioner demonstrates neither here. Therefore, petitioner's record-based claims are procedurally barred.

Assuming, *arguendo*, petitioner's ineffective assistance of counsel claim regarding the 911 tape were not procedurally barred from review in this court, the court would nonetheless deny it as meritless. From the record, it appears that petitioner's claim is baseless. The People provided copies of the 911 call, sprint report, and 911 certification report pursuant to open file discovery. (ECF No. 7-1, Exhibit A, Open

File Discovery.)  Additionally, the Assistant District Attorney

Lawrence Mottol state in an affirmation dated January 11, 2013,

that the People had submitted to the defense, *inter alia*,

recordigns of 911 calls and radio reports.  (ECF No. 7,

Affidavit in Opposition to Petition for a Writ of Habeas Corpus

¶ 6.)  Moreover, even if defense counsel had not requested or

received the tapes, petitioner has not demonstrated that such

failure satisfies either the performance or prejudice prong of

the *Strickland* test.

    2.   *Non-Record Based Claims*

       To the extent petitioner's ineffective assistance of

counsel claims regarding defense counsel's alleged failure to

request the 911 tape and to interview witnesses are not record-

based claims, they are unexhausted and meritless.  "To properly

exhaust an ineffective assistance of trial counsel claim that

relies on evidence outside the pretrial and trial record . . .

the petitioner must raise it as part of a motion to vacate

judgment under CPL § 440.10 and then seek leave to appeal to the

Appellate Division."  *Griffin*, 2013 WL 6579839, at *3.  CPL §

440.10 does not have a statute of limitations.  *See* CPL §

440.10(1) (providing a defendant may bring a motion to vacate an

entry of judgment "[a]t any time after the entry of a

judgment").

As noted above, the Appellate Division found that petitioner's ineffective assistance of counsel claims were "based, in part, on matter appearing on the record and, in part, on matter outside the record[.]" *Boyd I*, 136 A.D.3d at 936. The Appellate Division advised that a "CPL [§] 440.10 proceeding is the appropriate forum for reviewing the claim in its entirety." *Id.* Petitioner, however, never pursued a CPL § 440.10 proceeding. Accordingly, petitioner's non-record based claims are unexhausted. *Carpenter v. Unger*, Nos. 10-cv-1240, 12-cv-957 (GTS) (TWD), 2014 WL 4105398, at *25 (N.D.N.Y. Aug. 20, 2014) (finding the petitioner's ineffective assistance of counsel claims unexhausted because they were not record based and the petitioner did not raise them in a Section 440.10 motion); *Anthoulis v. New York*, No. 11-cv-1908 (BMC), 2012 WL 194978, at *4-5 (E.D.N.Y. Jan. 23, 2012) (same).

Although unexhausted claims may require dismissal of the entire petition or a stay of the petition, neither of those resolutions is appropriate here because petitioner's unexhausted ineffective assistance of counsel claims are meritless. *Strickland* requires a petitioner to satisfy both a performance prong and a prejudice prong in order to prevail on an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 684, 698. With respect to the 911 tapes, at a minimum, petitioner's claim is meritless as he cannot satisfy at least

the prejudice prong because even if his counsel did fail to request the 911 tapes from the People, the record demonstrates that the 911 tapes and radio reports were provided to counsel. Therefore, counsel's alleged failure to request the 911 tapes did not prejudice petitioner.

Petitioner's claim that defense counsel failed to interview or investigate "important fact witnesses," including the individual who lived in the building adjacent to the location of petitioner's arrest, fails to satisfy the performance prong. As a general matter, "[a]ctions or omissions by counsel that might be considered sound trial strategy do not constitute ineffective assistance." *McKee v. United States*, 167 F.3d 103, 106 (2d Cir. 1991) (citations and internal quotation marks omitted). A counsel's "failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel." *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002). This holds true even where an interview might have yielded exculpatory information. *United States v. Best*, 219 F.3d 192, 201 (2d Cir. 2000) ("[C]ounsel's decision as to whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation[.]" (citation and internal quotation marks omitted)). Here, although defense counsel has not submitted a statement explaining his decisions

whether or not to call, interview, or investigate certain witnesses, it is clear that petitioner's claims regarding those decisions are insufficient. Moreover, according to petitioner, defense counsel called several defense witnesses at trial. (ECF No. 1, Pet. at 21-26.)

Furthermore, petitioner cannot definitively state that counsel failed to interview at least one of the witnesses petitioner argues defense counsel should have interviewed. (ECF No. 1, Pet. at 41 ("However, up until the time of trial, it was and remains unclear . . . whether counsel conferred with this potential witness.").) Assuming counsel did not investigate or interview witnesses petitioner considers "important," such a failure would not warrant relief here. Petitioner identifies only one potential witness with any degree of specificity – the neighbor to the location where petitioner was arrested – and argues this individual should have been interviewed because "according to information and belief, [the neighbor] possessed a surveillance system which captured the incident." (Id. at 40.) However, petitioner provides no basis upon which the court could infer that the "surveillance system," if there was one, actually captured the incident, and, if it did, that it would produce exculpatory evidence. Thus, petitioner fails to establish any prejudice stemming from defense counsel's alleged failure. Moreover, to the extent counsel did not interview this

individual for strategic reasons, the court finds such a decision does not constitute a constitutionally deficient performance. For example, if the surveillance footage did in fact exist, counsel could have opted not to obtain or present it in the event it was more inculpatory than exculpatory.

With respect to the other, unidentified witnesses, there is no indication that interviews with or investigations of them would uncover any relevant, let alone exculpatory, evidence or change the result of trial. *See Davis v. Walsh*, No. 08-cv-4659 (PKC), 2015 WL 1809048, at *11 (E.D.N.Y. Apr. 21, 2015) (denying ineffective assistance claim where counsel did not interview a witness and there was no basis for finding that an interview would have yielded exculpatory evidence). Therefore, petitioner's ineffective assistance of counsel claim regarding uninterviewed witnesses is meritless.

For the above stated reasons, the court denies all of petitioner's claims of ineffective assistance of counsel.

## III.   **Brady claim**

### A.   Legal Standard

In a criminal matter, the prosecution has the obligation to disclose exculpatory evidence to the defendant. *Brady v. Maryland*, 373 U.S. 83 (1967); *Giglio v. United States*, 405 U.S. 150, 154 (1972). A *Brady* violation consists of three factors: (1) "[t]he evidence at issue must be favorable to the

accused, either because it is exculpatory or impeaching;"
(2) "that evidence must have been suppressed by the State,
either willfully or inadvertently;" and (3) "prejudice must have
ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).
Evidence is material and prejudice results if "there is a
reasonable probability that, had the evidence been disclosed to
the defense, the result of the proceeding would have been
different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).
Nondisclosure merits relief only if it "undermines confidence in
the outcome of the trial." *Kyles v. Whitly*, 514 U.S. 419, 434
(1995) (citation and internal quotation marks omitted).

B.    Application

Construing the petition liberally, petitioner asserts
a claim pursuant to *Brady* regarding the People's alleged failure
to turn over the 911 tape.  (ECF No. 1, Pet. at 37-39.)  This
claim is unexhausted, procedurally barred, and meritless.
Petitioner did not raise a *Brady* claim in his direct appeal in
the state court system, nor did he initiate a CPL § 440.10
proceeding regarding his *Brady* claim.  Thus, his *Brady* claim is
unexhausted.  Regardless, his claim is meritless because, as
discussed above, it appears from the record that the People
produced the very evidence petitioner claims it failed to
disclose.  Even if the People had failed to provide petitioner
with the 911 tape, petitioner has provided no basis to believe

that the 911 tape, which purportedly relayed a "shots fired" message, contained exculpatory or impeaching evidence that would have led to a different result at trial. Thus, petitioner's *Brady* claim is denied.

## CONCLUSION

For the foregoing reasons, the petition is denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability will be issued. 28 U.S.C. § 2253(c); *see Slack v. McDaniel*, 529 U.S. 473 (2005). Pursuant to 28 U.S.C. § 1915(a)(3), the court certifies that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is respectfully directed to enter judgment, serve a copy of this Memorandum and Order and the judgment on the *pro se* petitioner, note service on the docket, and close the case.

**SO ORDERED.**

Dated:    October 25, 2018
          Brooklyn, New York

                              /s/
                              _____
                              **KIYO A. MATSUMOTO**
                              United States District Judge
                              Eastern District of New York